468 P.2d 882

Paul D. REED, d/b/a Equipment Service of Roswell, Plaintiff-Appellant,

v.

Franklin JONES, New Mexico Commissioner of Revenue, Defendant-Appellee.

No. 434.

Court of Appeals of New Mexico.

April 17, 1970.

S. B. Christy, IV, C. D. Martin, Hinkle, Bondurant & Christy, Roswell, for plaintiff-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Richard J. Smith, Asst. Atty. Gen., for defendant-appellee.

OPINION

HENDLEY, Judge.

Plaintiff is engaged in the business of performing mechanical repairs. On October 31, 1969, Mead's Fine Bread Company of Amarillo, Texas, caused a bread deliv-

ery truck to be driven to Roswell, New Mexico, for the sole purpose of having plaintiff repair the motor, battery, generator, hand brake and clutch. Upon completion of the repairs the truck was driven back to Amarillo, Texas. The truck was used exclusively for the delivery of bread in Amarillo, Texas.

The Commissioner had issued a Non-Taxable Transaction Certificate to Mead's and Mead's delivered the certificate to plaintiff. Plaintiff had knowledge of the fact that the truck would be driven back to Amarillo, Texas. Plaintiff filed his gross receipts for the October, 1969 period. Plaintiff forwarded his payment for tax liability less the amount applicable to Mead's transaction. Plaintiff protested the Commissioner's ruling that the above transaction was non-deductible. An informal hearing was held before the Commissioner and a written Decision and Order issued stating that plaintiff was not entitled to the deduction provided by § 72–16A–14.12, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1969) in that the initial use of the product of the services was in the State of New Mexico.

We affirm.

Section 72–16A–14.12, supra, states:

"DEDUCTION—GROSS RECEIPTS TAX—SALE OF A SERVICE TO AN OUT-OF-STATE BUYER.—A. Receipts from performing a service other than a legal, accounting or architectural service may be deducted from gross receipts if the sale of the service is made to a person who delivers a nontaxable transaction certificate to the seller.

B. The buyer delivering the nontaxable transaction certificate must make initial use of the product of the service outside New Mexico."

■ We are asked to construe the term "initial use." Plaintiff contends: "* * * that the word 'use' connotes an ultimate purpose; the purport for which the particular thing will be consumed, and * * * the 'initial use' of the product of the serv-

ices rendered * * * [was] when said bread delivery truck was placed into service for the local delivery of bread in Amarillo."

We disagree.

Our Supreme Court stated in Winston v. New Mexico State Police Board, 80 N.M. 310, 454 P.2d 967 (1969):

"Legislative intent is to be determined primarily by the language of the act, State v. Shop Rite Foods, Inc., 74 N.M. 55, 390 P.2d 437; and words used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly indicated. State ex rel. State Highway Commission v. Marquez, 67 N.M. 353, 355 P.2d 287. * * *"

The Random House Dictionary of the English Language (1969) defines initial as "of or pertaining to the beginning; first: the initial step in a process." It also defines "use" as the "* * * act of employing, using, or putting into service * * *" We think these definitions are the ordinary and usual meaning and conclude that the "initial use" here occurred in New Mexico.

■ We are further convinced by the declared purpose of the act (§ 72–16A–2, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1969)) which states in part that the Gross Receipts Act "* * * is to provide revenue for public purposes by levying a tax on the privilege of engaging in certain activities within New Mexico * * *." Since the avowed purpose of the act is to provide revenue, any deductions must receive strict construction in favor of the taxing authority. The burden is on the taxpayer to establish clearly his right to the deduction and the intention to authorize the deduction claimed by the taxpayer must be clearly and unambiguously expressed in the statute. See Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1947) and Peisker v. Unemployment Compensation Commission, 45 N.M. 307, 115 P.2d 62 (1941). The taxpayer has not clearly established his right to the deduction because the statute does not clearly and unambigu-

ously authorize the deduction being claimed under the facts of this case. If it was clear and unambiguous, we would not have to construe "initial use."

In speaking on exemptions from taxation the United States Supreme Court stated in Hoge v. Railroad Co., 99 U.S. 348, 25 L. Ed. 303 (1879) the following:

"* * * But though this power is recognized, it is accompanied with the qualification that the intention of the legislature to grant the immunity must be clear beyond a reasonable doubt. It cannot be inferred from uncertain phrases or ambiguous terms. The power of taxation is an attribute of sovereignty, and is essential to every independent government. Stripped of this power, it must perish. Whoever, therefore, claims its surrender must show it in language which will admit of no other reasonable construction. If a doubt arise as to the intent of the legislature, it must be solved in favor of the State."

We think the same basic rule applies to deductions.

Affirmed.

It is so ordered.

WOOD, J., concurs.

SPIESS, C. J., dissenting.

SPIESS, Chief Judge (dissenting).

I am unable to concur in the opinion announced by the majority and respectfully dissent.

The majority, in affirming the decision of the Commissioner, have treated the term "initial use" [§ 72–16A–14.12, N.M.S.A. 1953 (Repl. 10, pt. 2, Supp.1969)] involving a delivery truck used exclusively by its owner for delivery of bread in Texas, as the equivalent of "driving the truck." Upon this premise, the majority conclude that driving the truck from New Mexico to Texas constituted the initial use of the product of the service (repair work) in New Mexico.

To my mind, the premise is unsound in that the words "use" and "driving" (operating), which the majority appear to treat as synonymous, are, as employed here, words of different meaning. The word "use," particularly of a truck by its owner, relates to the utilization of the vehicle for the purpose or objective of the owner. Driving the vehicle from the repair shop in New Mexico to the point where it was to be employed as a delivery truck in the state of Texas would be in aid of its use and not its use. Driving or operating simply means controlling the mechanism to the end that the vehicle will travel from place to place, and is not, under the facts involved here, the purpose or objective of the owner.

The definition of the word "use" as a noun, is, according to Webster's New International Dictionary, 2d ed., the "(1) [a]ct of employing anything, or state of being employed; application; employment; as, the *use* of a pen * * *" "(7) [f]unction; particular service; as, everything in nature seems to have its *use*."

Random House, to which the majority refer, defines the word as the act of employing, using, or putting into service; the state of being employed or used; an instance or way of employing or using something; a way of being employed or used; a purpose for which something is used.

According to the New Century Dictionary, *to make use of* is, "to employ, put to use for one's own purpose or advantage."

Accordingly, I think the legislature intended the word "use" to mean the employment of the product of the service for the purpose or objective of the owner, which, in this case, as stated, was for the delivery of bread in Texas. The initial use consequently would have occurred in Texas and not New Mexico.

In my view, the taxpayer's right to a deduction is clearly established by the record. The nontaxable transaction certificate should have been accepted by the Commissioner and the deduction allowed.

I would reverse.